78 F.3d 577
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Miguel SUCH-GONZALEZ and Barbara Ternosky, Plaintiffs, Appellants,
v.
ADMINISTRACION DE FOMENTO Y DESAROLLO AGRICOLA, et al.,
Defendants, Appellees.
 No. 95-1892.
 United States Court of Appeals, First Circuit.
 March 6, 1996.
 
 Fernando L. Gallardo for appellants.
 Ernesto Hernandez Milan for Commercial and Farm Credit and Development Corporation of Puerto Rico.
 Wally de la Rosa Vidal for Puerto Rico Land Authority.
 Before BOUDIN, Circuit Judge, COFFIN and ROSENN*, Senior Circuit Judges.
 COFFIN, Senior Circuit Judge.
 
 
 1
 This is the culmination of an aging lawsuit brought by a pioneer Puerto Rico rice farmer and his then wife against the Commonwealth sponsor, the Puerto Rico Land Authority (Authority), and financer, the Commercial and Farm Credit Development Corporation (CFCDC), arising out of what proved to be an ill-fated rice growing program.
 
 
 2
 Appellants, having filed in bankruptcy, brought this adversary proceeding under 11 U.S.C. § 1334. The amended complaint, so far as we are presently concerned, alleged three causes of action: breach of contract, defamation, and "lender liability." The district court granted summary judgment to defendants on all counts. We affirm.
 
 
 3
 In April of 1980, appellants entered into a lease agreement with the Authority in which they leased 325.60 cuerdas of land in Manati for rice growing purposes at an annual rent, payable in advance, of $40 per cuerda, less property taxes. Under clause 27, the Authority was to deliver the land "duly razed and leveled for the harvesting of rice and with the canals for flooding and draining said lands duly constructed." Clause 34, however, "expanded" clause 27 to provide both that the leveling should be "precise" and that, if the lessor could not deliver any land with precise leveling, "the parties will renegotiate in order to make an adjustment in the lease payments."
 
 
 4
 Clause 32 provided that the lease agreement contained "all covenants and stipulations agreed upon by the parties." And clause 33 provided that the lease payment was subject to renegotiation after the first year.
 
 
 5
 In September of 1980, CFCDC made its first loan to appellants, in the amount of $200,000. In 1981 there was a refinancing loan of $285,000; in 1984, one of $410,000; and in 1985, one of $457,609. Appellants made a first payment of $3,300 for approximately half of the first semester. No other payments were made.
 
 
 6
 While the first harvest of rice, in October of 1980, was excellent, the rest of the story is one of continual problems and frustrations. At some point, two fields were leveled "backwards," and had to be releveled by the Authority. A well was dug too deep, allowing seepage of salt water. The solitary airplane available for seeding flew too late in the day for effective work. There was trouble in getting equipment released and delay in decisions. Experts were called in but allegedly not listened to. Blast (a disease) afflicted the rice at one point; at another, the digging of a ditch across some of the property hindered operations. And appellants were moved from one farm to another.
 
 
 7
 Nevertheless, appellant Such (his wife having left Puerto Rico in 1985) continued to farm the property until July of 1986. Indeed, according to his deposition testimony, what "cut off the head of the project" was the coming to power of the Popular Democratic Party in 1985.
 
 
 8
 In September of 1986, the Authority brought an eviction proceeding in superior court, alleging a delinquency in rental payments of over $120,000. The court found that appellants, over the course of six years, had not sought renegotiation, and that the amount owed the Authority was $101,714.34. In March of 1987, appellants were ordered to vacate. In February of 1987, appellants filed in bankruptcy and in December of the same year brought this action.
 
 DISCUSSION
 
 9
 Breach of Contract. The district court properly invoked the principle that "a party to a bilateral contract who does not perform his obligations under the contract may not sue the other contracting party for breach of contract." We quote some of the court's discussion:
 
 
 10
 Under the common law doctrine of exceptio non aditempli contractus, a party to a bilateral contract who does not perform his obligations under the contract may not sue the other contracting party for breach of contract. Constructora Bauza, Inc. v. Garcia Lopez, 91 JTS 99, p. 9077 (1991); Martinez v. Colon Franco, 89 JTS 109, p. 7291 (1989); Heirs of Escalera v. Barreto, 81 P.R.R. 580, 591 (1959). This doctrine provides a defense to breach of contract derived from the Puerto Rico Civil Code. [footnote and citation omitted] If a leasee [sic] breaches a material clause of the lease, the defense of exceptio non aditempli contractus clearly applies to shelter the lessor from liability for his own failure to perform.
 
 
 11
 Appellants challenge the application of this principle, claiming that the Authority early and often breached the contract, citing the incidents we have summarized. They also sketchily claim in their brief that they requested renegotiation. But we have read their ill-assorted appendix and have meticulously reviewed the excerpts furnished us from the three depositions they have included. There is no hint of any request for renegotiation or of any indication that any of the trials and tribulations which they faced were considered as breaches. Non-payment of rent for six years, during which CFCDC disbursed some $800,000 on appellants' account, under a lease which specifically allowed the possibility of change in rent if renegotiation were requested, and the total absence of any request for renegotiation dictate our affirmance of summary judgment on the breach of contract claim.
 
 
 12
 Lender Liability. While the complaint refers to actions generally of both the Authority and CFCDC as supporting this claim, paragraph 47 makes clear that only Credito Agricola (the predecessor of CFCDC) is being charged. Appellants' brief on appeal also confines this issue to CFCDC.
 
 
 13
 Appellants aver that, in addition to tort bases for lender liability, breach of contract, with its fifteen year period of limitations, may also serve as a basis. Our discussion and ruling on the breach of contract issue disposes of any claim of such support for lender liability here.
 
 
 14
 The district court summarized appellants' tort based lender liability claims as intentional or negligent failure to comply with obligations under the contract, "complete control" over rice operations, pressure exerted because of such control, breach of fiduciary duties, and bad faith. The court looked in vain for specific information about actions under these headings and times when they were allegedly committed. It ruled that the only allegation approaching specificity, notice of a three month delay in furnishing equipment, occurred in 1984, far exceeding a year before filing of the complaint. It held the claim time barred.
 
 
 15
 The only specific conduct pointed to by appellants in their brief as evidence of tortious overreaching was the deposition testimony of one former project supervisor, Barbosa, that financial aid was "always a problem because they wanted to know everything that was going to be done." Appellants complain in their brief that CFCDC's predecessor "went as far as to condition their financing to their adhering strictly to the conditions and methods established by the Rice Project...." But the lease agreement itself provided, in clause 29: " 'The lessee' binds itself to conduct the seeding and harvesting of rice in accordance with the provisions of [the Rice Project]."
 
 
 16
 We find no suggestion of a genuine issue of material fact relevant to the lender liability claim, and certainly none within the one year limitations period.
 
 
 17
 Defamation. As for the defamation cause of action, it simply is not supported by anything in the record. The allegations are phrased in the most general terms: "false and defamatory statements during the periods of 1983 and 1984 and continuing in 1987, among various persons of the public, and of the business community, and of the press ... that coplaintiff Miguel Such was deceitful, fraudulent and made false representations of payment of his obligations and ... was in breach of his agreements with all the defendants...."
 
 
 18
 The only documentation in support of these allegations furnished to us was an excerpt from the deposition of co-appellant Barbara Ternosky. Her testimony is exceedingly frail. She left Puerto Rico in 1985. As concerns any statements in 1983 and 1984, she thought "there were, like, negative things going on, being said about the rice project...." She later confessed that she did not recall anything that was said.
 
 
 19
 Appellant Such, in his deposition, said that he recalled one article in some unmentioned publication in which a director of the Authority said some things damaging to him. But, when asked, he could not recall what had been said.
 
 
 20
 Such threads are not even gossamer. We see nothing that happened in 1983 and 1984 that rises to, or sinks to the depth of, defamation. And of course there is no indication that anything was said within the one year limitations period.
 
 
 21
 This has been a history inhospitable to all parties concerned. But they must be left where they are. We have not been able to discern the faintest glimmer of a genuine issue of material fact.
 
 
 22
 Affirmed.
 
 
 
 *
 Of the Third Circuit, sitting by designation